FILED
July 29, 2022
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:22-MJ- 587 |
| JOSE CARLOS RIVAS-CHAIREZ (01)<br>ANA DOMINGO-FRANCISCO (02) | |

CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Alleged Offense:**

On or about July 29, 2022, in the Fort Worth Division of the Northern District of Texas, the defendants, **Jose Carlos Rivas-Chairez** and **Ana Domingo-Francisco**, aiding and abetting each other and knowing that they were aliens illegally and unlawfully present in the United States, did knowingly and unlawfully possess in and affecting interstate or foreign commerce the following firearms: a Remington, model 1911 R1, .45 caliber pistol, bearing serial number RHE0078; and a Glock, model 19x, 9mm caliber pistol, bearing serial number BWZW084, in violation of 18 U.S.C. § 922(g)(5)(A) and § 924(a)(8) and § 2.

**Probable Cause:**

1. I, Kyle Medvetz (affiant), being duly sworn, depose and swear the following information is true and correct to the best of my knowledge and belief. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since March 2020. I am currently assigned to the Dallas Field Division office. I have prior experience working interstate trafficking investigations. Through those investigations, I have learned trends that indicate firearms trafficking or straw purchasing.

2. As an ATF Special Agent, my primary responsibilities are enforcing federal firearms laws as set forth in the United States Code, including the following violations pertaining to this investigation: 18 U.S.C. § 922(a)(6), False Statement to a Federal Firearms Licensee (straw purchase); and 18 U.S.C. § 922(g)(5)(A), Possession of a Firearm by an Alien Illegally and Unlawfully Present in the United States. I have conducted numerous federal investigations of criminal activity and have testified in federal court numerous times concerning a wide variety

of federal criminal violations including the aforementioned violations. I have conducted numerous debriefings of defendants, witnesses, informants, and other persons concerning the aforementioned and related violations.

3. As a result of training and experience as a Special Agent, I am familiar with the federal firearms laws and know it is unlawful for a person to possess a firearm as an alien illegally and unlawfully in the United States. I also know it is unlawful for someone to "*straw purchase*" a firearm. A *straw purchase* is committed when the individual purchasing the firearm is not the intended buyer. This typically occurs when an individual prohibited from purchasing and possessing firearms recruits an individual to acquire the firearm on their behalf.

4. This affidavit is based on my personal knowledge and on information provided to me by other law enforcement officers who participated in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me concerning this investigation.

5. In July of 2022, your affiant and an ATF SA were made aware of purchases of two FN, model Scar 17s, .308 caliber rifles by Jerusha Francisco on June 3 and June 6, 2022 from Range USA, a Federal Firearms Licensee (FFL), located at on S Cooper St in Arlington, Texas 76017. Francisco purchased each rifle for $4,005.24, for a combined total of $8,010.48.

6. A Texas Workforce Commission report showed Francisco earned $891.63 in 2022. In the fourth quarter of 2021, Francisco earned $10,052.97. Based on training and experience, your affiant knew that Francisco's lack of a discernable income and the amount of money spent on the purchase of two (2) similar firearms of the same caliber during a short period of time, was indicative of firearms trafficking and straw purchasing.

7. On or about July 27, 2022, your affiant and another ATF SA conducted an audio recorded non-custodial interview of Francisco at her residence. Francisco admitted to purchasing the aforementioned FN SCAR rifles at the direction of her sister, **Ana Domingo-Francisco (Domingo)**, for **Domingo's** boyfriend, **Jose Carlos Rivas-Chairez (Rivas)**. Francisco showed ATF SAs text message communication between herself and **Domingo**. The communication showed **Domingo** was directing Francisco to purchase the two rifles from Range USA for **Rivas**. The text messages also showed **Domingo** stated her address was 310 Mahogany Drive Arlington, Texas 76018. Francisco told your affiant **Domingo** resides at 310 Mahogany with her boyfriend, **Rivas**. Francisco told your affiant that **Rivas** was driving a black SUV.

8. On or about July 27, 2022, your affiant and another ATF SA went to Range USA. There, your affiant spoke with a Range USA employee who stated they remembered the two purchases Francisco made. A Range USA employee provided your affiant with surveillance footage from June 3, 2022, and June 6, 2022. Your affiant reviewed the footage, and on June 3, 2022,

**Criminal Complaint – Page 2**

observed **Rivas**, **Domingo**, and Francisco inside of Range USA.  **Rivas** pointed at a wall where the FN SCAR rifles were located and walked to the counter in front of the rifles.  **Francisco** walked next to **Rivas**.  While **Rivas** and Francisco stood next to each other, **Rivas** looked at Francisco, then looked toward the wall where the FN SCAR rifles were hanging.  **Rivas** did this multiple times.  **Rivas** walked away, and Francisco began talking to the Range USA employee and Francisco handled the FN SCAR rifle. After completing the ATF Form 4473, Francisco left the store with the FN Scar Rifle

9. On or about July 27, 2022, the Range USA employee told your affiant of a purchase of an FN, model SCAR 20S, 7.62x51mm NATO rifle, bearing serial number PR15071 by a Mario Lara. During this transaction, Lara overpaid for the firearm by $100. A Range USA employee contacted Lara, advised him of the overpayment, and Lara returned to retrieve the $100.  When the Range USA employee left work that night, the employee reported a black SUV followed the employee.

10. On or about July 27, 2022, your affiant contacted a Department of Homeland Security Special Agent to verify the immigration status of **Domingo** and **Rivas**.  The HSI SA advised your affiant both **Domingo** and **Rivas** are not United States citizens and are currently in the United States illegally.

11. On or about July 29, 2022, you affiant and additional ATF SAs went to 310 Mahogany Drive Arlington, Texas 76018 in an attempt to interview **Domingo** and **Rivas**.  The initial attempt to contact the residents at 310 Mahogany Drive was unsuccessful, and no one answered the door. Your affiant and another ATF SA attempted to contact **Domingo** via telephone.  Eventually, **Domingo** called your affiant, and told your affiant she was currently at a doctor's appointment at the Med-City Arlington Hospital.  Your affiant asked **Domingo** if your affiant could meet her at the hospital, and **Domingo** agreed.

12. Your affiant and additional ATF SAs responded to Med-City Arlington while additional ATF SAs remained at 310 Mahogany Drive.  Once at Med-City Arlington, your affiant contacted **Domingo** via telephone to inquire about her current location. **Domingo** told your affiant she was currently on her way home because she forgot her driver's license.

13. As your affiant returned to 310 Mahogany Drive, another ATF SA observed an induvial exit the front of 310 Mahogany Drive.  The ATF SA met with the individual, and determined this individual was a relative of **Rivas**. Moments later, **Domingo** exited the front of the residence, and an ATF SA began to talk with her.

14. During the interview, **Domingo** admitted to directing Francisco to purchase two FN SCAR rifles for **Rivas**.  **Domingo** also showed ATF SAs the communication between her and

Francisco where she directed Francisco regarding the purchases. At that time, **Domingo** told ATF SAs that she was a citizen of Mexico.

15. While **Domingo** was being interviewed, your affiant asked the relative of **Rivas** to call **Rivas** and ask him to come outside. The call was completed, and **Rivas** exited the front door of 310 Mahogany Drive and began talking to your affiant.

16. During an audio recorded non-custodial interview between ATF SAs, your affiant, and **Rivas**, **Rivas** admitted to directing multiple individuals, including Francisco and Mario Lara, to purchase firearms on **Rivas**'s behalf. **Rivas** told your affiant there were multiple firearms currently inside of the residence. Your affiant asked Jose Rivas-Chairez if he would provide written consent for your affiant and ATF SAs to search the house for the firearms, ammunition, and other illicit items. **Rivas** agreed, as long as he was present during the search. Your affiant, another ATF SA, and **Rivas** read aloud from an ATF Consent to Search form. **Rivas** agreed to provide consent and signed the ATF Consent to Search form.

17. Once consent to search 310 Mahogany Drive was obtained, ATF SAs conducted a protective sweep of the interior of the residence. It was determined no other persons were inside of the residence, and ATF SAs began the search of 310 Mahogany Drive.

18. Your affiant, another ATF SA, and **Rivas** then walked through each room of 310 Mahogany Drive, and **Rivas** identified every place firearms, ammunition, firearm related items, and illicit narcotics were stored. In the master bedroom of 310 Mahogany Drive, **Rivas** showed your affiant where a Remington, model 1911 R1, .45 caliber pistol bearing serial number RHE0078 was stored in a dresser drawer, loaded with eight (8) rounds of .45 caliber ammunition. **Rivas** also showed your affiant where a Glock, model 19x, 9mm caliber pistol bearing serial number BWZW084 was stored tucked into the south side of the master bed and loaded with seventeen (17) rounds of 9mm caliber ammunition. Leaning against the wall, in the northwest corner of the master bedroom, was an Aero Precision, model TX, multi caliber rifle, with serial number TXM4-06723. A drum magazine was inserted into the firearm, and approximately 62 rounds of .223/5.56 caliber ammunition was found inside. In the master bedroom closet, where female clothing belonging to **Domingo** was stored, a large cardboard box, standing approximately four feet tall, was propped up. Inside of the box was an FN, model Scar 20S, 7.62X51mm caliber rifle, with serial number PR19567. In addition, while searching the master bedroom, items belonging to **Domingo** were located. **Rivas** also told your affiant he occupied the room with **Domingo** and their two children. Moreover, during your affiant's interview with **Rivas**, your affiant confirmed **Rivas** and **Domingo** were in a domestic, boyfriend-girlfriend relationship, and **Domingo** is pregnant with their child.

19. Throughout the residence, numerous empty firearm boxes were located. **Rivas** stated the firearms that were once in those boxes were no longer present in the house. Of note were four

empty boxes with identifying markings to the following firearms: an FN, model SCAR 17S, 7.62x51mm NATO rifle, bearing serial number H1C11871; an FN, model SCAR 20S, 7.62x51mm NATO rifle, bearing serial number PR22565; and an FN, model SCAR 17S, 7.62x51mm NATO rifle, bearing serial number H1C12232; an FN, model SCAR 17S, 7.62x51 NATO rifle, bearing serial number H0C27133. Two of the firearms once in the boxes were purchased by Francisco, and two of the firearms once in the boxes were purchased by another individual known by your affiant to have purchased them from an FFL.

20. In a downstairs room of 310 Mahogany Drive, ATF SAs located a white substance suspected to be methamphetamine. In this same room was a device to remove a tire from a rim, and a rim attached to a tire. **Rivas** stated the tire once contained kilograms of methamphetamine which he sold prior to your affiant's arrival at 310 Mahogany Drive. **Rivas** directed ATF SAs to additional trash bags stored on the side of 310 Mahogany Drive where numerous empty bags with a white residue were located. **Rivas** stated these empty bags once contained kilograms of methamphetamine and were previously stored in a separate tire.

21. **Rivas** directed ATF SAs to two duffel bags sitting on the living room floor. Inside of those bags, ATF SAs located two (2) disassembled FN SCAR 17S rifles, one (1) disassembled FN SCAR 20S rifle, one (1) suspected suppressor (silencer), nine (9) Glock handguns, and one (1), Colt handgun. The firearms and suspected suppressor were wrapped in towels, which were then wrapped in cellophane. An ATF SA questioned **Rivas** about the suppressor, and **Rivas** stated the suppressor makes the firing of a firearm quieter.

22. In total, in excess of one hundred and fifty-one (151) firearm boxes were observed throughout **Rivas** and **Domingo's** residence.

23. Through an interview of **Rivas** and **Domingo** on July 29, 2022, and upon further search of their immigration records by an immigration officer, it was confirmed that **Rivas** and **Domingo** are not citizens or nationals of the United States and are aliens illegally and unlawfully present in the United States. A review of automated immigration systems indicated that **Rivas** was a citizen of Mexico who entered the United States on a B-2 visitor visa on July 3, 2004, with authorization to remain in the United States until January 1, 2005. Since the expiration of his visa, **Rivas** overstayed his visa and unlawfully remained in the United States without permission from the United States Attorney General or the Secretary of the Department of the Homeland Security. A review of automated immigration systems indicated **Domingo** was a citizen of Guatemala who entered the United States unlawfully and without inspection on or about October 19, 2017, and was found by immigration officials near San Luis, Arizona, and subsequently placed into immigration removal proceedings. Thus, at the time **Rivas** and **Domingo** possessed the above-described firearms, they were both illegally and unlawfully present in the United States. Further, in interviewing them, they admitted they were illegally present in the United States and that they knew of this illegal status.

24. An ATF certified Firearms Interstate Nexus Expert determined that the Remington, model 1911 R1, .45 caliber pistol, bearing serial number RHE0078, and Glock, model 19x, 9mm caliber pistol, bearing serial number BWZW084 were not manufactured in the state of Texas. Therefore, at the time that **Rivas** and **Domingo** possessed the two firearms in their home in Fort Worth, Texas, they would have previously traveled in interstate and/or foreign commerce at some time prior to being possessed by **Rivas** and **Domingo**.

Based upon the above facts and circumstances, I submit that there is probable cause to believe that **Jose Carlos Rivas-Chairez** and **Ana Domingo-Francisco**, aiding and abetting each other and knowing that they were aliens illegally and unlawfully present in the United States, did knowingly and unlawfully possess, in and affecting interstate or foreign commerce, the following firearms: an Remington, model 1911 R1, .45 caliber pistol, bearing serial number RHE0078; and a Glock, model 19x, 9mm caliber pistol bearing serial number BWZW084, in violation of 18 U.S.C. § 922(g)(5)(A), and § 924(a)(8), and § 2.

_Kyle Medvetz_
Kyle Medvetz
ATF Special Agent

Sworn to me, over the telephone or other electronic means, and signed by me pursuant to Fed. R. Crim. P. 4.1 on this __29th__ day of July 2022 at __7:33__ p.m., in Fort Worth, Texas.

_Hal R. Ray, Jr._
HAL R. RAY, JR.
UNITED STATES MAGISTRATE JUDGE